**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**SANDRA MISTER**                                                                                   **PLAINTIFF**

**vs.**                                                                     **CIVIL ACTION NO. 3:12CV96-SAA**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security**                              **DEFENDANT**

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Sandra Armstrong Mister for for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Docket 10, p. 56-61. Plaintiff protectively applied for benefits on May 21, 2007, alleging that she became disabled on January 1, 2001 due to coronary artery disease, chronic heart failure, ischemic cardiomyopathy, cardiomegaly, hypertension, insulin dependent diabetes Mellitus, diabetic/peripheral neuropathy, seizure disorder, cognitive dysfunction, obesity, migraine-type headaches, anxiety and depression.

The plaintiff's claim was denied initially on September 28, 2007 and on reconsideration on December 4, 2007. *Id.* at 8-9, 38, 40-42. After plaintiff's timely request, an Administrative Law Judge held a hearing on March 11, 2010. Docket 10, p. 629-653. The ALJ issued an unfavorable decision on March 26, 2010. *Id.* at 528. The Appeals Council granted plaintiff's request for a review on September 17, 2010 and remanded the case to the ALJ. *Id.* at 524-27. The ALJ held a second hearing on January 26, 2011, at which plaintiff was not present because she was hospitalized. Docket 19, p. 1-17. The ALJ rendered a second unfavorable decision on

February 18, 2011.  Docket 10, p. 497-510.  The Appeals Council denied plaintiff's request for review on August 22, 2012.  *Id.* at 481-84.  The plaintiff timely filed the instant appeal from the Commissioner's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

### I.  FACTS

The plaintiff was born on August 5, 1966 and was forty-three years old at the time of the first hearing.  Docket 10, p. 56.  She has a ninth grade education.  *Id.* at p. 633.  She had worked only briefly as a janitor and as a sewing machine operator.  *Id.* at 633-64.  Plaintiff protectively filed her disability application on May 21, 2007, alleging that she became disabled on January 1, 2001 due to coronary artery disease, chronic heart failure, ischemic cardiomypathy, cardiomegaly, hypertension, insulin dependent diabetes Mellitus, diabetic/peripheral neuropathy, seizure disorder, cognitive dysfunction, obesity, migraine-type headaches, anxiety and depression.  The ALJ rejected her claims of disability, concluding that even though the plaintiff had severe impairments of "diabetes mellitus with early neuropathy symptoms, status post stroke, episodic seizures, headaches, hypertension, cardiomegaly, back disorder, and obesity, "[1] she could perform the full range of sedentary work.  After considering her residual functional capacity [RFC], age, education and past work experience, the ALJ determined, based upon the

---

[1] Interestingly, the ALJ did not find plaintiff's impaired vision to be a severe impairment in his February 28, 2011 decision despite finding it a severe impairment in the original decision. There is no evidence in the record that plaintiff's vision had improved by the time the second opinion was issued.

2

20 CFR 404, Subpart P, Appendix 2, Rule 201.24, that plaintiff could perform a significant number of jobs in the national economy. Docket 10, p. 509-10. Consequently, plaintiff was not disabled.

Plaintiff claims that Commissioner failed to file a complete administrative transcript, that the ALJ did not afford proper weight to the opinions of plaintiff's treating physicians and that the Commissioner's ultimate decision is not supported by the totality of the evidence. Docket 14. Although plaintiff raises these three issues as grounds for appeal, the undersigned is of the opinion that the ALJ did not properly evaluate and weigh the opinions of the plaintiff's treating physicians which resulted in an improper RFC. Had the ALJ properly weighed the opinions of the treating physicians who provided opinions, he would have concluded that the plaintiff could not perform sedentary work. Therefore, the ALJ's opinion is unsupported by substantial evidence.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[4] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or

---

[2] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[3] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[4] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

3

mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[7] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review

---

[5] 20 C.F.R. §§ 404.1520(c), 416.920(c)(2010).

[6] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[7] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[8] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[9] *Muse*, 925 F.2d at 789.

and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

Plaintiff argues that the ALJ failed to properly consider the opinions of her treating physicians of over ten years, Dr. Castillo and Dr. Farmer, and instead improperly relied upon his own lay interpretation of the medical records and some of the findings of one-time examining physician to reach the RFC. Docket 14, p. 14; Docket 22, p. 4-5. The Commissioner responds that the ALJ's opinion that plaintiff can perform sedentary work is supported by the record and that *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), does not apply to this case. Additionally,

---

[10] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[11] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

the Commissioner asserts that Dr. Farmer's Updated Medical Opinions is "nothing more than a two-page check-box form" and that "forms unaccompanied by in-depth analysis are entitled to little weight." Docket 21, p. 11. However, the Commissioner routinely relies upon these check-box forms from non-treating physicians to support ALJ's opinions that deny benefits. In this case, the check-box form was from a treating physician who has over 12 years of experience treating the plaintiff and diagnosing her illnesses in comparison to typical non-examining physicians who merely review plaintiff's records and provide opinions as to their abilities to perform work related functions. As this court has noted previously, the Commissioner's argument that the treating physician's check-box form is only entitled to little weight borders on frivolous.

       This case involves an RFC based upon the opinion of a physician who examined plaintiff one time only four months after her application for benefits and before many of her medical records had been made a part of the record. Although some portions of the report of Dr. Adams are consistent with the ALJ's RFC, a reading of the entire report, in combination with the record as a whole, does not support the ALJ's RFC. Specifically, in his report from six years ago, Dr. Adams noted that plaintiff had early neuropathy symptoms in both legs and that she could not elevate her heels and could only elevate her left toes – not her right. Pulses were absent in both lower extremities and Dr. Adams could not feel an inguinal pulse on the left and could barely feel it on the right lower extremity. He indicated that she would have a difficult time crossing a street before the light changed. We now know that plaintiff has had her left leg amputated below the knee due to a diabetic foot ulcer becoming cyanotic and gangrenous. Docket 10, p. 617-

628.[12]

Dr. Castillo has treated plaintiff for ten (10) years and provided a MSS on August 27, 2007. Docket 10, p. 379-384. He opined that plaintiff frequently experienced pain severe enough to seriously interfere with attention and concentration required to perform even simple work tasks. He also found that plaintiff could stand/walk for less than two hours in an eight-hour day and could sit for six hours, but would require the option to shift from sitting to standing or walking and might require an assistance device for walking. Further, Dr. Castillo noted that plaintiff could lift and carry less than ten pounds and that she would likely be absent from work about four days per month due to her illnesses. These limitations were confirmed by Dr. Farmer, her treating physician of over twelve years, in reports dated February 2010 and January 2011. Docket 10, p. 126-27, 616. The Medical Source Statements from Dr. Castillo and Dr. Farmer are the only opinions in the record setting forth plaintiff's vocationally-relevant functional limitations. Dr. Adams was not asked to provide a MSS. Because he assigned both treating physicians' opinions little weight, it appears that the ALJ reached his conclusion as to plaintiff's vocationally relevant functional limitations on his own after hearing plaintiff's testimony and reviewing the raw medical data.

Without doubt the responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), but in making this determination he must consider all the evidence in the record, evaluate the medical opinions in

---

[12] Interestingly, the Appeals Council returned records concerning the amputation to plaintiff and advised that she could utilize the records to pursue a new claim. Plaintiff has been patient while waiting on a final decision on this claim for six (6) years. She should not have to file a subsequent claim when the Commissioner and now the court has the necessary evidence to make a determination on her claim.

light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). An ALJ may not establish physical limitations or the lack of such limitations without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F.3d at 35.

The court has examined the record and found multiple limitations that the ALJ not only excluded from his RFC, but simply disregarded. Specifically, he failed to include any limitation concerning plaintiff's vision which he had included in the original opinion and for which there is no record indicating that plaintiff's vision has improved. Additionally, there is no limitation provided that plaintiff must be allowed to shift from sitting to standing or walking at will and that she may be required to use an assistive device for walking.

As argued by plaintiff, in the Fifth Circuit, "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995). This appears to be exactly what the ALJ did in this case. In direct contradiction to both the medical evidence in the record and applicable case law, the ALJ established physical limitations without any medical proof to support those limitations, then, using those unsupported limitations, reached an RFC based upon his own extrapolation from the medical records to rate plaintiff's ability to work. This process produced an improper RFC and ultimately an improper evaluation under the Grids.

As a consequence, the court finds that the ALJ did not satisfy his affirmative duty to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Had the ALJ properly included all of plaintiff's medically determinable limitations in the RFC, he would have determined that plaintiff cannot perform sedentary work, and therefore is disabled within the meaning of the Social Security Regulations.

As a matter of note, the Commissioner asserts that *Newton* does not apply to this case even though the opinions of Dr. Castillo and Dr. Farmer are inconsistent with Dr. Adams's findings; because Dr. Adams was an examining physician, the Commissioner argues that the ALJ was not under a duty to re-contact either of plaintiff's treating physicians Dr. Castillo or Dr. Farmer. Docket 21, p. 10. The court has reviewed Dr. Adams's report and concludes that the opinions of the three physicians are actually consistent with each other; consequently, if the ALJ wanted to give less weight to the treating physician opinions, he was required to contact the treating physicians to clarify the record. It appears that the ALJ picked only the portions of Dr. Adams's records that support a denial of benefits instead of considering the record as a whole and, he interpreted Adams's records to support limitations or a lack thereof that are found anywhere else in the record.

Interestingly, the Commissioner makes much of plaintiff's non-compliance in treating her diabetes. However, the record clearly supports the fact that plaintiff does not have the financial ability to obtain the prescriptions necessary to control her diabetes. Docket 10, p. 649. *Wingo v. Bowen*, 852 F.2d 827 (5th Cir. 1988)("When a claimant cannot afford prescribed treatment or medicine and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'"). Plaintiff's daughter testified that she works to help her mother pay the

9

electric bill, and her brother works to pay the rent. Docket 19, p. 9-10. She further testified that plaintiff has received insulin through a reduced or free program and that she takes her insulin when she is able to obtain it. *Id.* at 10. The court is not convinced that plaintiff's non-compliance is of her own choice.

The court finds that the ALJ did not satisfy his affirmative duty to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The ALJ's decision was not supported by substantial evidence and should be vacated.

## IV. DETERMINATION OF BENEFITS

In determining whether to reverse the Commissioner's final decision and remand or to grant benefits without further administrative review, the court must look to the completeness of the record, the weight of the evidence in favor of the plaintiff, the harm to the claimant that further delay might cause, and the effect of a remand delaying the ultimate receipt of benefits by a deserving plaintiff. SOCIAL SECURITY LAW & PRACTICE, §55.77, p. 129. In this case, the plaintiff has been very patient. She has been seeking benefits through the administrative processes for over six years. The evidence in this case is clear. Both of plaintiff's treating physicians have provided opinions indicating that plaintiff is unable to perform even sedentary work, and, as a result, plaintiff is determined to be disabled. The court holds that because the evidence is conclusive, an award of benefits at this stage would be in the best interests of the plaintiff's health and welfare and will avoid further undue delay which would result upon remand for additional review. The court directs that this case be remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## V.  PLAINTIFF'S REMAINING ARGUMENTS

Because the court has determined that the plaintiff is disabled under the Social Security Act, and this action is being remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act, the court need not address the merits of the plaintiff's remaining arguments at this time.

## VI.  CONCLUSION

For the foregoing reasons, the court finds that the decision of the ALJ was not supported by substantial evidence, that plaintiff is determined to be disabled and entitled to benefits under the Social Security Act.  This case is remanded for the sole purpose of determining the amount of benefits to be awarded.  A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 18th day of June, 2013.

  /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE